UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TOWN OF KEARNY,<br>*Plaintiff,*<br><br>v.<br><br>FLYNYON LLC, FLYNYON DIGITAL LLC, HELO HOLDINGS INC., NYONAIR and RTC PROPERTIES INC.,<br>*Defendants.* | Civil Action No. 2:26-cv-12857 (JKS) (JSA) |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR REMAND**
**Motion Returnable November 2, 2026**

Gregory J. Castano Jr.
Schuyler Abbott
CASTANO QUIGLEY CHERAMI LLC
7 Giralda Farms – Suite 170
Madison, N.J. 07940
(973) 808-1234
Attorneys for the plaintiff

## TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

PRELIMINARY STATEMENT .......... 1

STATEMENT OF FACTS AND PROCEDURAL HISTORY .......... 2

LEGAL ARUMENT .......... 7

I. THE TOWN IS THE MASTER OF ITS COMPLAINT, AND IT PLEADED ONLY STATE-LAW ZONING CLAIMS IN WHICH NO ASPECT OF FEDERAL LAW IS IMPLICATED .......... 7

II. DEFENDANTS' ANTICIPATED FEDERAL PREEMPTION DEFENSE CANNOT SUPPORT REMOVAL .......... 14

III. THE COURT SHOULD AWARD THE TOWN ITS COSTS AND ATTORNEY'S FEES UNDER 28 U.S.C. § 1447(C) .......... 18

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

*Statutes and Ordinances*

28 U.S.C. 1331 .......... 6

28 U.S.C. 1367 .......... 6

28 U.S.C. 1441 .......... 6

28 U.S.C. 1447 .......... 6, 18, 20

N.J.S.A. 40:55D-18 .......... 5, 7, 9, 13

Kearny Municipal Code § 36-9.9 .......... 5, 7, 9

Kearny Municipal Code § 38-4.3 .......... 3

*Cases*

*Abels v. State Farm Fire & Cas. Co.*
770 F.2d 26 (3d Cir. 1985) .......... 6

*Am. Airlines, Inc. v. Wolens*
513 U.S. 219 (1995) .......... 1, 7

*Bayer v. Snap-On Tools Corp.*
913 F.2d 108 (3d Cir. 1990) .......... 6

*Beneficial Nat'l Bank v. Anderson*
539 U.S. 1 (2003) .......... 7, 16

*Caterpillar Inc. v. Williams*
482 U.S. 386 (1987) .......... 7, 15-16, 18

*Christianson v. Colt Indus. Operating Corp.*
486 U.S. 800 (1988) .......... 9

*Eastman v. Marine Mech. Corp.*
438 F.3d 544 (6th Cir. 2006) .......... 13

*Empire HealthChoice Assurance, Inc. v. McVeigh*
547 U.S. 677 (2006) .......... 8, 12, 17, 19

*FERC v. Mississippi*
456 U.S. 742 (1982) .......... 13

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*
463 U.S. 1 (1983) .......... 15-16

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*
545 U.S. 308 (2005) .......... 1, 2, 8, 9, 11, 12, 13, 14, 19

*Gunn v. Minton*
568 U.S. 251 (2013) .......... 8-9, 11

*In re U.S. Healthcare, Inc.*
193 F.3d 151 (3d Cir. 1999) .......... 16

*Kalick v. Northwest Airlines Corp.*
372 F. App'x 317 (3d Cir. 2010) .......... 2, 10, 11, 12, 13, 16, 19

*Louisville & Nashville R.R. Co. v. Mottley*
211 U.S. 149 (1908) .......... 15

*Martin v. Franklin Capital Corp.*
546 U.S. 132 (2005) .......... 18

*Merrell Dow Pharms. Inc. v. Thompson*
478 U.S. 804 (1986) .......... 11

*Mints v. Educ. Testing Serv.*
99 F.3d 1253 (3d Cir. 1996) .......... 18

*Samuel-Bassett v. KIA Motors Am., Inc.*
357 F.3d 392 (3d Cir. 2004) .......... 6

## PRELIMINARY STATEMENT

The Town of Kearny (the "Town") brought this action in the Superior Court of New Jersey for a single purpose: to enforce the conditions of its own zoning approvals.

The verified complaint tells a straightforward story. Defendants operate a heliport only because the Town's Zoning Board of Adjustment granted a use variance on two sworn conditions: the facility would offer no helicopter tours and it would keep set seasonal hours. Defendants have broken both conditions every month for years and the Town now invokes the Municipal Land Use Law and the Kearny Municipal Code to stop them. The case begins and ends with state and local zoning law. No aspect of federal law is implicated.

Defendants removed the case anyway. Their Notice of Removal concedes the Town framed "the Complaint as a matter of state law," yet it recasts a local zoning enforcement action as a referendum on federal aviation regulation. Defendants combed the exhibits for references to the Federal Aviation Administration and the National Transportation Safety Board and argue those references somehow convert the case into one "arising under" federal law pursuant to *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005).

However, *Grable* forecloses that move. The Supreme Court has never treated a "federal issue" as "a password opening federal courts to any state action embracing a point of federal law." *Id.* at 314. The Third Circuit has applied that principle to reject federal jurisdiction over a state-law claim that rested on federal aviation regulations far more directly than the Town's claims do. *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320–21 (3d Cir. 2010) (per curiam). The law does not permit defendants to rewrite a pleading to manufacture federal jurisdiction.

Removal fails for two independent reasons. First, the Town is the master of its complaint and it chose to plead only state-law zoning claims that do not raise any federal question, let alone a substantial one. Second, whatever federal issue defendants hope to litigate is, at most, a preemption defense, and a defense cannot support removal even when the plaintiff anticipates it. Because defendants had no objectively reasonable basis for removing a case they admit is framed entirely in state law, the Court must remand and award the Town costs under 28 U.S.C. § 1447(c).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

### *A. The Property and Its Zoning Approvals.*

Defendant RTC Properties Inc. ("RTC") owns the property at 100 Central Avenue, also known as 165 Western Road, Block 288, Lot 10.01 (the "Property"),

where its tenant, Helo Holdings Inc. ("HHI"), operates the HHI Heliport. (Compl. ¶¶ 1–2) The Property lies in the Town's SKI-S zone, and Section 38-4.3 of the Kearny Zoning Ordinance "specifically prohibit[s]" any use not designated there as permitted, accessory, or conditional. (Compl. ¶¶ 7–8) Because a heliport is none of these, HHI may operate only under a use variance granted by the Town of Kearny Zoning Board of Adjustment (the "Board"). (Compl. ¶ 9)

Between 2005 and 2014, RTC and HHI obtained five Board approvals, each on the representation that the Property would serve as an industrial support facility rather than a passenger operation. (Compl. ¶¶ 12–24) In 2008, the applicants' engineer told the Board that "[t]he site would not be used for people just looking for a helicopter ride." (Compl. ¶ 16) In 2012, HHI's CEO of operations, Jeff Hyman, testified under oath that "the site does not permit passengers." (Compl. ¶ 22.)

The 2014 approval controls. The Town Engineer required the applicant to testify to its hours of operation and Mr. Hyman did so under oath. (Compl. ¶¶ 28, 30) As the Board's resolution records, he stated that the facility would operate from 8 a.m. to 7 p.m. in the spring, summer, and fall and from 8 a.m. to 5 p.m. in winter, and that "[h]is facilities would offer no helicopter tours." (Compl. ¶ 30) The Board approved the application "subject to the following conditions" and

accepted Mr. Hyman's testimony as satisfying the outstanding hours-of-operation comment. (Compl. ¶¶ 33–34)

*B. Defendants' Violations*

Defendants FlyNYON LLC, FlyNYON Digital LLC, and NYONAir (the "FlyNYON Defendants") sell helicopter tours that depart from the Property and advertise operating hours of 8 a.m. to 11 p.m., seven days a week. (Compl. ¶¶ 35–41) According to FlyNYON's own founder, its first paying customers flew in November 2014, the same month Mr. Hyman assured the Board there would be no tours. (Compl. ¶ 35)

The Town's experts analyzed flight data for the Property from October 1, 2024 through August 16, 2026. (Compl. ¶¶ 46–50) Of 59,495 flight operations in that period, FlyNYON conducted 39,007, or 65.6%, and 14,172 operations, or 23.8%, occurred outside the hours Mr. Hyman represented. (Compl. ¶¶ 50, 58) Outside-hours operations occurred in every reporting period. (Compl. ¶ 58)

The Town's Zoning Officer issued Zoning Violation ZV-25-00064 on September 17, 2025. (Compl. ¶ 64) Defendants let both the September 26, 2025 compliance date and an extended October 31, 2025 deadline pass, and the Town issued municipal court summonses to RTC and HHI on February 5, 2026. (Compl. ¶¶ 64–66) Nothing changed. After the notice, the outside-hours rate held at 24.5%

while total operations rose, and defendants continue to operate as before. (Compl. ¶¶ 67–72)

*C. The Legal Basis and the Relief Sought*

The complaint rests on two enforcement provisions, both creatures of state and local law. Kearny Municipal Code § 36-9.9(d) authorizes the Town to "enjoin the violation" of any condition of site plan approval and N.J.S.A. 40:55D-18 directs the governing body to "enforce this act and any ordinance or regulation made and adopted hereunder." *Id.* The Town seeks only to enjoin violations of limitations imposed by the Board in reliance on the applicant's sworn representations. The complaint does not cite a single federal statute or regulation as the source of any right or remedy.

*D. The Complaint's Federal References*

The complaint mentions federal agencies only as background. It notes the heliport's FAA identifier and the absence of any federal award to the facility, and it recounts FAA and NTSB findings about a 2018 accident flight. (Compl. ¶¶ 10–11, 43–44) It then alleges that the FAA correspondence "address[es] only which federal operating rules governed the 2018 accident flight" and contains no "reference to land use, zoning, local approvals, heliport siting, or municipal authority." *Id.* ¶ 45. The Town's expert draws the same line: "Federal legality and zoning compliance are separate questions." (Compl. Ex. 13 at 3)

*E. Removal*

The Town filed its complaint on September 28, 2026. ECF No. 1 ¶ 12. Two days later RTC and the FlyNYON Defendants removed the action with HHI's stated consent, invoking 28 U.S.C. §§ 1331 and 1367. *Id.* ¶¶ 11 & n.1, 15, 23. The Notice advances a single theory of federal-question jurisdiction: that the complaint embeds substantial federal issues under *Grable*. *Id.* ¶¶ 16–22.

## LEGAL STANDARD

A defendant may remove only a civil action "of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). When it appears at any time before final judgment that the district court lacks subject matter jurisdiction, "the case shall be remanded." 28 U.S.C. § 1447(c)

The removing party bears the burden of establishing that jurisdiction exists. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Because removal intrudes on the plaintiff's choice of forum and on the authority of the state courts, removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985)).

## LEGAL ARGUMENT

Point I

**THE TOWN IS THE MASTER OF ITS COMPLAINT AND IT PLEADED ONLY STATE-LAW ZONING CLAIMS IN WHICH NO ASPECT OF FEDERAL LAW IS IMPLICATED.**

The Court lacks federal-question jurisdiction because the Town chose to plead state-law zoning claims and nothing in those claims depends on federal law. Defendants reach a different conclusion only by reimagining the complaint as something it is not.

*A. The Well-Pleaded Complaint Rule Entitles the Town to Rely Exclusively on State Law.*

Federal-question jurisdiction exists only when "a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). That rule "makes the plaintiff the master of the claim," so a plaintiff "may avoid federal jurisdiction by exclusive reliance on state law." *Id.* Defendants' own authority frames the test the same way: a suit arises under federal law when the "plaintiff's statement of his own cause of action shows that it is based upon those laws." ECF No. 1 ¶ 18 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003).

The Town's "statement of [its] cause of action" rests entirely on state and local law. The Town sues under N.J.S.A. 40:55D-18 and Kearny Municipal Code §

36-9.9(d) to enforce the conditions recorded in a Board resolution. Compl. ¶¶ 8, 30, 33–34, 73–74. Defendants identify no federal cause of action and concede the complaint is framed "as a matter of state law." ECF No. 1 ¶ 19. Under the well-pleaded complaint rule, that concession should end the inquiry.

*B. Defendants' Reimagined Complaint Does Not Fit Grable's "Special and Small Category."*

To attempt to escape the consequences of their concession, Defendants invoke *Grable*. ECF No. 1 ¶¶ 16–22. But *Grable* did not open the federal courthouse to every state-law claim that mentions a federal subject. The Court stressed it had never "treated 'federal issue'" as a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314. The doctrine instead asks whether a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* One year later, the Court described *Grable* as marking out a "special and small category" of cases and reiterated that "it takes more than a federal element 'to open the "arising under" door.'" *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699, 701 (2006) (quoting *Grable*, 545 U.S. at 313).

The Court has since restated the inquiry as four requirements: the federal issue must be "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4)

capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013). Defendants must satisfy every requirement, and they cannot satisfy the first, third or fourth.

1. NO FEDERAL ISSUE IS RAISED.

*Grable* shows what a necessarily raised federal issue looks like. In *Grable*, the plaintiff "premised its superior title claim on a failure by the IRS to give it adequate notice, as defined by federal law," so whether it received notice "within the meaning of the federal statute" was "an essential element of its quiet title claim." *Grable,* 545 U.S. at 314–15. Indeed, the meaning of the federal statute "appear[ed] to be the only legal or factual issue contested in the case." *Id.* at 315; *see also Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988) (claim supported by an alternative theory that does not require federal law does not arise under federal law).

The Town's claim contains no comparable federal element. It addresses only the conditions of the 2014 local land use approval and Defendants' use of the Property contrary to those conditions. N.J.S.A. 40:55D-18; Kearny Mun. Code § 36-9.9(d). Neither requires a court to construe any federal statute or regulation.

The hours condition presents a question a clock can answer: did operations occur before 8 a.m. or after 7 p.m. (5 p.m. in winter)? The complaint answers it with time-stamped flight records. Compl. ¶¶ 57–58.

The tours condition presents a question of plain meaning under a municipal resolution: did the facility "offer . . . helicopter tours?" *Id.* ¶ 30. Defendants' own marketing answers that, advertising "New York City Helicopter Tours," a "NJ Doors-off Helicopter Tour," and per-seat products that each "Departs from Kearny, NJ." *Id.* ¶¶ 36–37. The Town can prove every element of its claim without showing that a single flight violated a federal operating rule.

Defendants respond by pointing to the Town's expert report and its discussion of FAA regulations. ECF No. 1 ¶ 19. That report is evidence, not a claim, and the well-pleaded complaint rule asks what the plaintiff must prove, not what proof it attaches. The report itself confirms that the federal discussion is beside the point. It describes federal operating-rule compliance as "a matter within the FAA's enforcement jurisdiction, not the Town's," and concludes that "[w]hether FlyNYON's tours are federally authorized or not, they are helicopter tours operated from a facility whose approval rests on the sworn representation that there would be none." (Compl. Ex. 13 at 12) The complaint likewise alleges that the FAA correspondence says nothing about "land use, zoning, local approvals, heliport siting, or municipal authority." (Compl. ¶ 45.)

The Third Circuit rejected a far stronger version of defendants' argument in *Kalick*. There, an airline passenger's state-law contract and fraud claims expressly relied on a federal aviation regulation governing compensation for bumped

passengers and the passenger argued that his claims "necessarily involve[d] the interpretation of a federal regulation" under *Grable*. *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) (per curiam). The court disagreed holding that a plaintiff "cannot simply cite to a federal regulation that does not give rise to a private cause of action in order to satisfy federal subject matter jurisdiction." *Id.* at 320–21. If citing a federal aviation regulation as part of the claim was not enough in *Kalick*, defendants cannot create jurisdiction by pointing to a federal regulatory discussion in an expert report the Town's claims do not require to be successful.

Even if a court consulted a federal definition to give content to the word "tours," the result would not change. A state-law claim that borrows a federal standard does not for that reason arise under federal law. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813–14 (1986); *see also Grable*, 545 U.S. at 316–19 (explaining that *Merrell Dow* refused jurisdiction over a state claim premised on violation of a federal labeling standard). The meaning of a condition in a Kearny Board resolution is a question of New Jersey law for a New Jersey court.

#### 2. No substantial federal issue is presented.

Substantiality turns on the importance of the issue to the federal system, not to the parties. *Gunn*, 568 U.S. at 260. *Grable* qualified because the Government had "a direct interest in the availability of a federal forum to vindicate its own

administrative action." *Garble*, 545 U.S. at 315. As the Court later explained, the dispute in *Grable* "centered on the action of a federal agency (IRS) and its compatibility with a federal statute," and its resolution "was both dispositive of the case and would be controlling in numerous other cases." *Empire HealthChoice*, 547 U.S. at 700. *Grable* thus "presented a nearly 'pure issue of law,'" whereas the claim in *Empire HealthChoice* was "fact-bound and situation-specific" and fell outside the doctrine. *Id.* at 700–01.

Just like *Empire HealthChoice*, this case is "poles apart from *Grable*." *Id.* at 700. It asks whether one heliport in one Kearny zone kept the hours and honored the use restrictions its operator swore to before a local board. No federal agency is a party, no federal agency action is under review and the Town challenges no "FAA airspace decision, route, or altitude." (Compl. Ex. 13 at 11) The answer will turn on flight logs, marketing materials, and Board resolutions, and it will control no case but this one.

*Kalick* confirms the point in the aviation context. The Third Circuit could not "see . . . how [the passenger's] contract dispute with NWA implicates significant federal interests, or how the state court's interpretation of the regulation, as it applies to the contract, would be dispositive and controlling in numerous other cases." *Kalick,* 372 F. App'x at 320. The court emphasized that the complaint did not dispute "the interpretation of the federal regulation . . . , only

whether NWA abided by the regulations." *Id.* The same is true here. Even under defendants' reimagined version of the complaint, the most a court could be asked is whether particular flights complied with federal rules, a fact-bound application of settled law rather than a contested question of federal law. And defendants' appeal to "public aviation safety" as a general federal interest, ECF No. 1 ¶ 19, fares no better. A reference to federal law as a source of public policy "does not create a substantial federal question." *Id.* at 321 (citing *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 553 (6th Cir. 2006)).

3. FEDERAL JURISDICTION WOULD UPSET THE FEDERAL-STATE BALANCE.

Even a contested and substantial federal issue is "subject to a possible veto" if federal jurisdiction would upset "the sound division of labor between state and federal courts." *Grable*, 545 U.S. at 313–14. That veto applies with full force in this matter.

Land-use regulation is a core local function, "perhaps the quintessential state activity." *FERC v. Mississippi*, 456 U.S. 742, 767 n.30 (1982). The New Jersey Legislature assigned zoning enforcement to municipalities and directed that they "shall enforce" it. N.J.S.A. 40:55D-18.

Congress, by contrast, has provided no federal cause of action to enforce municipal zoning conditions and the Federal Aviation Act creates no private right of action at all. *Kalick*, 372 F. App'x at 320. *Grable* treats the absence of a federal

cause of action as "evidence relevant to, but not dispositive of," the jurisdictional inquiry, and as a "missing welcome mat" when federal jurisdiction "would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Garble,* 545 U.S. at 318. *Grable* permitted jurisdiction only because "it will be the rare state title case that raises a contested matter of federal law," so federal jurisdiction would have "only a microscopic effect on the federal-state division of labor." *Id.* at 315 and 319.

Defendants' theory has the opposite effect. If correct, every zoning dispute involving an airport, heliport, or helipad would belong in federal court simply because aircraft use the site. That is precisely the "potentially enormous shift of traditionally state cases into federal courts" that *Grable* refused to sanction. *Id.* at 319.

In short, the Town plead state-law claims and those claims raise no federal question that is necessary, substantial or appropriate for federal resolution.

Point II

**DEFENDANTS' ANTICIPATED FEDERAL PREEMPTION DEFENSE CANNOT SUPPORT REMOVAL.**

Stripped of its *Grable* label, defendants' real argument is that federal aviation law somehow displaces the Town's zoning conditions. That is a

preemption defense. A defense cannot support removal and the narrow doctrine of complete preemption has no application to this matter.

*A. A Federal Defense, Including Preemption, Never Creates "Arising-Under" Jurisdiction.*

The Supreme Court has foreclosed removal on this basis in unmistakable terms: "a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). That principle, which controls, is more than a century old. *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908).

Defendants frame the supposed federal issue as whether helicopter operations at the Property "compl[y] with federal regulations" and implicate "the federal government's strong interest in the uniform regulation of aviation." ECF No. 1 ¶¶ 19–20. Whatever its merit, that argument contends that federal law governs the field and that the Town may not regulate it. It is a defense to the Town's claim, not an element of it.

The complaint's references to federal matters do not alter the analysis. The Town alleges that the facility is private-use and federally unfunded and that the FAA correspondence says nothing about zoning. Compl. ¶¶ 10–11, 45. Those allegations simply answer a defense the Town expects Defendants to raise, and

anticipating a federal defense in a complaint does not convert a state-law claim into a federal one. *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 14 (1983); *Caterpillar*, 482 U.S. at 393.

*B. The "Complete-Preemption" Exception Does Not Apply.*

The sole exception to the rule is complete preemption, which applies only when a federal statute so thoroughly displaces state law that it "provide[s] the exclusive cause of action for the claim asserted." *Beneficial Nat'l Bank*, 539 U.S. at 8. The Supreme Court has recognized complete preemption under only a handful of statutes, including Section 301 of the Labor Management Relations Act, Section 502(a) of ERISA, and the National Bank Act. *Id.* at 6–11. The Third Circuit carefully distinguishes that jurisdictional doctrine from ordinary preemption, which operates only as a defense. *In re U.S. Healthcare, Inc.*, 193 F.3d 151, 160 (3d Cir. 1999).

Defendants did not invoke complete preemption and attempting to do so would be fruitless. No federal aviation statute provides any cause of action for a municipality to enforce the conditions of a local land-use approval, much less an "exclusive" one. *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320 (3d Cir. 2010) (per curiam). A statute that supplies no federal cause of action cannot supply the "exclusive" one complete preemption requires.

*C. The New Jersey Courts Can Decide Defendants' Preemption Defense.*

Remand does not deprive defendants of their defense. The Supreme Court has confirmed that a state court "is competent to apply federal law, to the extent it is relevant." *Empire HealthChoice*, 547 U.S. at 701. State courts routinely adjudicate federal aviation preemption in particular. *Wolens*, the seminal case against preemption, began in state court, where the Illinois courts decided whether federal law preempted state-law claims against an air carrier before the Supreme Court reviewed that judgment. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222-226 (1995).

*Wolens* also illustrates why the defense presents a merits question that the state court is well suited to resolve. The Court held that federal preemption "bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves," drawing a line between "what the State dictates" and "what the airline itself undertakes." *Id.* at 222, 233. On remand, the Town will show that the conditions it enforces originated in HHI's own sworn representations to the Board. (Compl. ¶¶ 28–34) Whether that history bears on any preemption analysis is a question for the Superior Court. It is not a basis for federal jurisdiction.

Defendants' anticipated preemption defense cannot support removal, and the Court should remand.

Point III

**THE COURT SHOULD AWARD THE TOWN ITS COSTS AND ATTORNEY'S FEES UNDER 28 U.S.C. § 1447(C).**

An order remanding a case "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). Absent unusual circumstances, a court may award fees when "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Third Circuit does not require a showing of bad faith. *Mints v. Educ. Testing Serv.*, 99 F.3d 1253, 1260 (3d Cir. 1996). The standard exists to deter removals sought "for the purpose of prolonging litigation and imposing costs on the opposing party," while preserving a defendant's right to remove when a reasonable basis actually exists. *Martin*, 546 U.S. at 140–41.

Defendants had no objectively reasonable basis for removal. Their own Notice concedes that the Town framed the complaint "as a matter of state law." ECF No. 1 ¶ 19. That concession placed this case squarely within a rule the Supreme Court settled decades ago: a plaintiff may avoid federal jurisdiction by relying exclusively on state law, and a federal defense, including preemption, cannot support removal. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392-93 (1987).

To evade that rule, defendants did not identify any element of the Town's claim that turns on federal law. Instead, they reimagined the complaint, treating references in the Town's evidence as though they were federal claims, even though the same evidence expressly disclaims any reliance on federal operating rules. Compl. ¶ 45 and Ex. 13 at 3, 12. The very authority defendants invoke forecloses that approach. *Grable* refused to treat a "federal issue" as "a password opening federal courts to any state action embracing a point of federal law," *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005), and *Empire HealthChoice* confirmed that the doctrine reaches only a "special and small category" of cases centered on pure questions of federal law. *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699-701 (2006). The Third Circuit applied those principles in the aviation context more than fifteen years ago, rejecting *Grable* jurisdiction over state-law claims that relied on a federal aviation regulation far more directly than anything in the Town's Complaint. *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317, 320–21 (3d Cir. 2010) (per curiam). No reasonable reading of this authority permits a defendant to remove a municipal zoning action because the plaintiff's evidence mentions a federal agency.

The timing and effect of the removal reinforce the point. The removal halted the Town's state-court enforcement effort while the violations continue unabated.

Most notably, the defendants' removal stripped jurisdiction from the state court less than 15 hours before a hearing on the Town's temporary restraining order application permitting them to continue operating in violation of the law.

Section 1447(c) exists to prevent exactly this result: a removal that shifts the cost and delay of an unfounded jurisdictional detour onto the plaintiff, and here onto the taxpayers of the Town.

Accordingly, the Court should award the Town the costs and attorney's fees it incurred as a result of the removal, in an amount to be established by certification of counsel pursuant to L. Civ. R. 54.2.

**CONCLUSION**

The Town plead a state-law zoning enforcement action squarely under New Jersey law and Town ordinances. No federal question appears on the face of the complaint, no substantial federal issue is necessarily raised and defendants' preemption defense, however framed, cannot support removal.

Accordingly, this action must be remanded and the Town must be awarded costs and attorney's fees under 28 U.S.C. § 1447(c)

Respectfully,

Schuyler Abbott