**LOWENSTEIN SANDLER LLP**
Matthew R. Friedenberg (Bar No. 043262011)
Michael T. Long (Bar No. 029622004)
John S. Stolz (Bar No. 034721997)
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
*Attorneys for Defendant RTC Properties Inc.*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TOWN OF KEARNY,<br><br>Plaintiff,<br><br>v.<br><br>FLYNYON LLC, FLYNYON DIGITAL LLC, HELO HOLDINGS INC., NYONAIR and RTC PROPERTIES INC.,<br><br>Defendants. | Civil Action No. 2:26-cv-12857 (JKS)(JSA)<br><br>*Document Electronically Filed*<br><br>**Motion Day: November 17, 2026** |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND AND FOR COSTS AND ATTORNEY'S FEES**

On the Brief:
Matthew R. Friedenberg
Michael T. Long
John S. Stolz

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... iii

PRELIMINARY STATEMENT ..... 1

COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY ..... 3

A. The Property and the Conditions the Town Seeks to Enforce ..... 3

B. The Complaint Seeks Rulings Under Federal Law to Establish the Alleged Zoning Violations ..... 4

C. The Report's Statement That Federal Legality and Zoning Compliance Are "Separate Questions" ..... 7

D. Procedural History ..... 8

LEGAL ARGUMENT ..... 8

POINT I THE ACTION ARISES UNDER FEDERAL LAW UNDER GRABLE AND GUNN, AND REMOVAL WAS AT A MINIMUM OBJECTIVELY REASONABLE ..... 10

A. Necessarily Raised ..... 10

B. Actually Disputed ..... 13

C. Substantial ..... 13

D. Federal-State Balance ..... 15

E. *Tipp City* Supports Removal, and the Town's Later Authorities Do Not Foreclose It ..... 16

F. The Town's Authorities Are Inapposite, and the Question Remains Open ..... 17

POINT II THE NOTICE OF REMOVAL MADE NO "CONCESSION" BUT INSTEAD IDENTIFIED ARTFUL PLEADING ..... 20

POINT III THE TOWN'S REQUEST FOR FEES AND COSTS SHOULD BE DENIED ..... 22

A. Fees Are Not a Penalty for Losing a Remand Motion ..... 22

A. Controlling and District of New Jersey Authority Denies Fees for Colorable Removals in Unsettled Areas ..... 23

B. Other Courts Deny Fees in Comparable Circumstances .......................25
C. *Yellen* and *Mercom* Are Distinguishable ..............................................26
D. The Timing of Removal Is Not an "Unusual Circumstance" ................27
CONCLUSION ...........................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abels v. State Farm Fire & Cas. Co.*,
770 F.2d 26 (3d Cir. 1985) ....................9

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995). (OTSC Letter Br. .) ....................7, 13

*Boyer v. Snap-on Tools Corp.*,
913 F.2d 108 (3d Cir. 1990) ....................9

*Brahamsha v. Supercell Oy*,
No. 16-8440, 2017 WL 3037382 (D.N.J. July 17, 2017) ....................24

*Caterpillar Inc. v. Williams*,
482 U.S. 386 (1987) ....................19

*City of Tipp City v. City of Dayton*,
204 F.R.D. 388 (S.D. Ohio 2001) ....................*passim*

*Delaware v. BP America Inc.*,
578 F. Supp. 3d 618 (D. Del. 2022) ....................25

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
547 U.S. 677 (2006) ....................*passim*

*FERC v. Mississippi*,
456 U.S. 742 (1982) ....................16

*Fuller v. Jefferson Cnty.*,
No. 24-cv-00157-DDD-STV, 2024 WL 3340973 (D. Colo. June 4, 2024) ....................16, 26

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*,
545 U.S. 308 (2005) ....................*passim*

*Gunn v. Minton*,
568 U.S. 251 (2013) ....................*passim*

*Inselberg v. N.Y. Football Giants, Inc.*,
661 F. App'x 776 (3d Cir. 2016) ....................10, 23, 24

*Kalick v. Northwest Airlines Corp.*,
372 F. App'x 317 (3d Cir. 2010) (per curiam) ....................2, 14, 17, 27

*Lane v. CBS Broadcasting Inc.*,
612 F. Supp. 2d 623 (E.D. Pa. 2009)....................25, 27

*League of Women Voters of Pa. v. Pennsylvania*,
921 F.3d 378 (3d Cir. 2019) ....................2, 23, 24

*Lockhart v. Bd. of Cnty. Comm'rs*,
No. 24-cv-00951-CNS-STV, 2024 WL 5671113 (D. Colo. June 4, 2024) ....................16, 25

*Martin v. Franklin Capital Corp.*,
546 U.S. 132 (2005)....................*passim*

*Mercom Group, LLC v. Diati Staffing, LLC*,
No. 16-3475, 2016 WL 4054921 (D.N.J. July 26, 2016)....................26, 27, 28

*Merrell Dow Pharms. Inc. v. Thompson*,
478 U.S. 804 (1986)....................18, 21, 27

*MHA LLC v. HealthFirst, Inc.*,
629 F. App'x 409 (3d Cir. 2015) ....................8, 9, 15

*Mints v. Educational Testing Service*,
99 F.3d 1253 (3d Cir. 1996) ....................23

*In re Processed Egg Products Antitrust Litigation*,
836 F. Supp. 2d 290 (E.D. Pa. 2011)....................25

*Ramos v. JetBlue Airways Corp.*,
No. 22-01214, 2022 WL 7993153 (D.N.J. Oct. 13, 2022)....................24

*Roxbury Condo. Ass'n v. Anthony S. Cupo Agency*,
316 F.3d 224 (3d Cir. 2003) ....................23

*Samuel-Bassett v. KIA Motors Am., Inc.*,
357 F.3d 392 (3d Cir. 2004) ....................9

*Town of Superior v. Bd. of Cnty. Comm'rs*,
No. 24-cv-00711-DDD-STV, 2024 WL 4591384 (D. Colo. Sept. 26, 2024) ..... 16

*Yellen v. Teledyne Cont'l Motors, Inc.*,
832 F. Supp. 2d 490 (E.D. Pa. 2011) ..... 20, 26, 27

**Statutes**

28 U.S.C. § 1331 ..... 8

28 U.S.C. §§ 1331, 1441(a) ..... 8

28 U.S.C. § 1367 ..... 8

28 U.S.C. § 1446(b) ..... 28

28 U.S.C. § 1447(c) ..... 1, 9, 22, 28

Class Action Fairness Act ..... 24

Copyright Act ..... 27

Federal Aviation Act ..... 26

Kearny Municipal Code § 36-9.9(d) ..... 4

Medicare Act ..... 14

N.J.S.A. 40:55D-18 ..... 4, 16

**Other Authorities**

14 C.F.R. § 119.1(e)(2) and § 91.147 ..... 5, 10, 22

14 CFR 119.1(e)(4)(iii) ..... 2

14 CFR 119.1(e)(4)(iii).' ..... 6, 7

14 CFR §§ 110.2 and 136.1(d) ..... 4, 10

ACTION ARISES UNDER FEDERAL LAW UNDER *GRABLE* ..... 10

Civ. R. 54.2 ..... 28

NOTICE OF REMOVAL MADE NO "CONCESSION" ....................................... 20

NTSB Report AAR-19/04 ....................................... 6

Report's Statement That Federal Legality and Zoning Compliance Are "Separate Questions" ....................................... 7

RTC, "Defendants" ....................................... 1

## PRELIMINARY STATEMENT

Defendants RTC Properties Inc. ("RTC"), FlyNYON LLC, FlyNYON Digital LLC, and NY on Air Limited Liability Company (improperly pled as NYONair) (collectively, the "NYON Defendants," and together with RTC, "Defendants") respectfully submit this brief in opposition to the motion of Plaintiff Town of Kearny (the "Town") to remand and for costs and attorney's fees under 28 U.S.C. § 1447(c). (Pl.'s Br., ECF No. 8-1.) Defendant Helo Holdings Inc. ("HHI") consented to removal. (Notice of Removal ("Notice") ¶ 13, ECF No. 1.)

This action arises under federal law because it necessarily raises a substantial and disputed federal issue, and Defendants respectfully ask the Court to deny remand. In the alternative, even if the Court concludes that the action belongs in the Superior Court, removal rested on an objectively reasonable basis, and the Town's request for fees and costs should be denied. Three points support those conclusions.

First, the Town's request to enjoin the NYON Defendants' alleged helicopter tours necessarily raises, and turns on, a substantial determination of federal law. The Town seeks to establish that the NYON Defendants operate helicopter tours within the meaning of Federal Aviation Administration ("FAA") regulations, and on that basis, alleges that the operations violate the alleged "no helicopter tours" condition of HHI's zoning approval. The Town's own expert report, which the Town attached to and verified with its Complaint, states that "the federal regulatory frame gives

'helicopter tours' a settled meaning," and that FAA regulations "suppl[y] an objective, federal definition against which the 'no helicopter tours' representation can be measured[.]" (Compl. Ex. 13 at 3.) As further evidence that the NYON Defendants allegedly operate FAA-defined helicopter tours (and thus violate the alleged "no tours" condition), the Town invokes the FAA Chief Counsel's conclusion that a FlyNYON-branded flight "would likely qualify as a commercial air tour," and the National Transportation Safety Board's ("NTSB") finding that the operators "exploited the exception at 14 CFR 119.1(e)(4)(iii)." (Compl. ¶¶ 10, 43-44.)

Second, whether *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005), reaches a municipal enforcement action of that kind is an open question in this Circuit. The Town's principal authority, *Kalick v. Northwest Airlines Corp.*, 372 F. App'x 317 (3d Cir. 2010) (per curiam), is a non-precedential decision about a passenger's dispute with an airline. *Kalick* did not consider a governmental plaintiff that affirmatively uses federal regulatory classifications to define and prove the violation it alleges.

Third, under *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005), fees are available only when the removing party "lacked an objectively reasonable basis for seeking removal." The Third Circuit has reiterated that "a colorable removal claim in an area of unsettled law" does not merit a fee award. *League of Women*

*Voters of Pa. v. Pennsylvania*, 921 F.3d 378, 384 (3d Cir. 2019) (quoting *Roxbury Condo. Ass'n v. Anthony S. Cupo Agency*, 316 F.3d 224, 228 (3d Cir. 2003)). The Notice tied each characterization of the Town's case to the Town's own pleading and verified exhibits, applied the governing four-part test, and did not rest on preemption as a defense. Moreover, the Notice cited *City of Tipp City v. City of Dayton*, 204 F.R.D. 388 (S.D. Ohio 2001), an aviation case that permitted removal of a state-law nuisance claim where, as here, the nuisance claim raised a substantial issue of federal law. And courts have found removal objectively reasonable where, as here, the plaintiff's own pleading invited the federal argument. The Court should retain the action. But even if the Court disagrees, fee shifting is inappropriate.

## <u>COUNTERSTATEMENT OF FACTS AND PROCEDURAL HISTORY</u>

### A. The Property and the Conditions the Town Seeks to Enforce

RTC owns property at 100 Central Avenue, also known as 165 Western Road, Block 288, Lot 10.01, in Kearny, New Jersey (the "Property"). (Compl. ¶ 1.) HHI, RTC's tenant, operates a heliport there. (*Id.* ¶ 2.) Jeff Hyman is HHI's CEO of operations. (*Id.* ¶ 3.) The Town alleges that heliports are not a permitted use in the Property's zone and that HHI may operate a heliport only under a use variance granted by the Town of Kearny Zoning Board of Adjustment (the "Board"). (*Id.* ¶¶ 7-9.) The Town seeks to enforce two statements that it alleges Mr. Hyman made in sworn testimony in 2014 concerning "current operations" at HHI: "estimated"

seasonal hours of operation, and that "[h]is facilities would offer no helicopter tours." (*Id.* ¶ 30.) The Complaint invokes N.J.S.A. 40:55D-18 and Kearny Municipal Code § 36-9.9(d). (*Id.* ¶¶ 73, 75.) The Town asks the Court to enjoin operations outside the stated hours and to enjoin "helicopter tours at or from the Property." (*Id.*, Wherefore Cl. ¶¶ A-B.) Defendants dispute the Town's allegations, including that Mr. Hyman's statements are enforceable conditions of the Board's approval, the merits of which are not before the Court on this motion. (Notice ¶ 13.)

### B. The Complaint Seeks Rulings Under Federal Law to Establish the Alleged Zoning Violations

The Complaint does not rest on the Board's resolution alone. The Complaint alleges that the NYON Defendants' operations violate the alleged "no helicopter tours" condition of HHI's zoning approval largely because the operations are "helicopter tours" as defined by federal aviation regulations. And the Town invokes the FAA Office of the Chief Counsel's view on the NYON Defendants' operations to make out this claim.

*The Complaint relies on federal classification of Defendants' aviation operations.* The Complaint attaches and incorporates the September 13, 2026 report of the Aloft Group, prepared by a 30-year FAA veteran. (Compl. ¶¶ 10, 46-47; Compl. Ex. 13.) Under the heading "The federal regulatory frame gives 'helicopter tours' a settled meaning," the report explains that "[u]nder 14 CFR §§ 110.2 and 136.1(d), a 'commercial air tour' is a flight conducted for compensation or hire in

an airplane or helicopter where a purpose of the flight is sightseeing." (Compl. Ex. 13 at 3.) The report explains that such flights must be conducted either under a Part 119 certificate subject to Part 135 or under Part 91 pursuant to a Letter of Authorization issued under § 91.147, within the nonstop exception of § 119.1(e)(2). (*Id.*) The report then states that this federal framework "***supplies an objective, federal definition against which the 'no helicopter tours' representation can be measured***." (*Id.* (emphasis added).) In other words, as the Town has pleaded it, determining whether Defendants are violating the alleged "no helicopter tours" zoning condition requires the Court to determine whether the operations at issue are in fact "helicopter tours" under complex federal regulations.[1]

*The Complaint analyzes Property-level flight data against the federal framework.* After establishing the governing federal framework, the report applies that framework to Property-level flight data. The report measures July 2026 flight tracks against the criteria of 14 C.F.R. § 119.1(e)(2) and § 91.147, and concludes that the flights "sit squarely inside the operational profile of the Part 91 nonstop commercial air tour exception" and that the operator "must hold either Part 135 commercial air tour authority or a § 91.147 LOA." (*Id.* at 6.) Based on this Property-level data measured in federal terms, as well as the FAA's and NTSB's alleged

[1] The complexity of these FAA regulations is evident in the fact that the Town retained an FAA expert pre-litigation to explain the regulations in the Complaint.

determinations regarding the 2018 FlyNYON-branded flight, the report concludes that "helicopter sightseeing tours are being operated from HHI contrary to the representation on which the 2014 approval was based." (*Id.* at 8.) The Town thus asks the Court to find, measured against the federal definition its expert supplies, that helicopter tours are occurring, and on that basis that the alleged zoning condition is violated.

*Federal agency determinations.* In its effort to establish that helicopter tours are allegedly occurring under the governing federal framework, the Town highlights the FAA Office of the Chief Counsel's prior opinion to that effect. That opinion analyzed federal law, and federal law alone. The Complaint alleges that after the March 11, 2018 crash of a FlyNYON-branded flight operated by Liberty Helicopters ("Liberty"), "[t]he FAA Office of the Chief Counsel concluded that the flight 'would likely qualify as a commercial air tour, even though it was not conducted as such,'" and that "[t]he FAA's final determination, reported to the NTSB in April 2019, was that the flight operated as a commercial air tour." (Compl. ¶ 43; Compl. Ex. 13 at 5.) The Complaint further alleges that in NTSB Report AAR-19/04, "the NTSB concluded that Liberty and NYONair 'exploited the exception at 14 CFR 119.1(e)(4)(iii).'" (Compl. ¶ 44; Compl. Ex. 13 at 5.) The Complaint describes that FAA correspondence as addressing "which federal operating rules governed the 2018 accident flight." (Compl. ¶ 45.)

*The order to show cause letter brief.* The Town's remand brief ignores that, at the same time the Town filed the Complaint, it sought temporary restraints enjoining alleged helicopter tours, relying on the same federal framework, in a letter brief supporting its order to show cause application (the "OTSC Letter Brief," ECF No. 1-1). The OTSC Letter Brief cites the FAA expert's report, and states that "the FAA determined that the flight operated as a commercial air tour" and that "[t]he NTSB concluded the operators had 'exploited the exception at 14 CFR 119.1(e)(4)(iii).'" (OTSC Letter Br. at 5.) The OTSC Letter Brief also anticipates a federal-law contest, predicting that "Defendants will likely argue federal preemption" and responding under *American Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995). (OTSC Letter Br. at 2, 11-12, 14.)

### C. The Report's Statement That Federal Legality and Zoning Compliance Are "Separate Questions"

The same report also states that "[f]ederal legality and zoning compliance are separate questions," and that "[a] commercial air tour flown in full compliance with a § 91.147 LOA is still a helicopter tour for purposes of the representation Mr. Hyman made to the Board." (Compl. Ex. 13 at 3.) The report describes compliance with the federal operating rules as "a matter within the FAA's enforcement jurisdiction, not the Town's." (*Id.* at 12.) The Complaint alleges that the FAA correspondence contains no reference to "land use, zoning, local approvals, heliport

siting, or municipal authority." (Compl. ¶ 45.) Defendants address these statements in Points I.A and I.F below.

### D. Procedural History

The Town filed the Complaint in the Superior Court of New Jersey, Chancery Division, Hudson County, on September 28, 2026, together with an application for an order to show cause with temporary restraints. (Notice ¶ 12; ECF No. 1-1 at PageID 25-26, 31.) Two days later, on September 30, 2026, RTC and the NYON Defendants filed the Notice with HHI's consent. (Notice ¶¶ 11, 13.) The Notice invoked 28 U.S.C. § 1331 under *Grable* and *Gunn v. Minton*, 568 U.S. 251 (2013), and invoked 28 U.S.C. § 1367 for the remaining claims. (Notice ¶¶ 15-23.) The Town moved to remand and for fees and costs on October 7, 2026. (ECF No. 8.)

## LEGAL ARGUMENT

A defendant may remove any civil action over which the district courts have original jurisdiction, including actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441(a). A complaint that pleads only state-law claims still arises under federal law where a state-law claim "raises a substantial embedded federal issue that can be addressed by the federal courts without disturbing congressional intent." *MHA LLC v. HealthFirst, Inc.*, 629 F. App'x 409, 411 (3d Cir. 2015). Jurisdiction lies if the federal issue is "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution

in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 568 U.S. at 258. A federal issue is necessarily raised when "an element of the state law claim requires construction of federal law." *MHA*, 629 F. App'x at 412-13.

Defendants carry their burden of establishing jurisdiction with allegations set forth in the Town's verified pleading. *See Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). The Town invokes the presumption favoring remand (Pl.'s Br. at 6), but that presumption resolves doubt about jurisdiction, and the Town's own pleading leaves none. *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990); *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985). The Town pleaded the federal framework, attached a verified expert report applying it, and alleged federal agency determinations as proof of its claim. (Compl. ¶¶ 10, 43-45; Verification ¶ 2; Compl. Ex. 13 at 3.) A plaintiff that builds its case on federal law cannot invoke the presumption to disown what it chose to plead.

The presumption also has no role in the separate fee inquiry. Fees turn only on whether the removal had an objectively reasonable basis. *Martin*, 546 U.S. at 141. The Supreme Court has rejected any reading of § 1447(c) that would discourage removal "in all but obvious cases." *Id.* at 140.

## POINT I

## THE ACTION ARISES UNDER FEDERAL LAW UNDER *GRABLE* AND *GUNN*, AND REMOVAL WAS AT A MINIMUM OBJECTIVELY REASONABLE

The Supreme Court has acknowledged that the canvas in this area "looks like one that Jackson Pollock got to first." *Gunn*, 568 U.S. at 258 (quoted in *Inselberg v. N.Y. Football Giants, Inc.*, 661 F. App'x 776, 779 (3d Cir. 2016)). The Third Circuit has observed that the doctrine "has not been a model of clarity." *Inselberg*, 661 F. App'x at 779. Each element is satisfied on this record, and the Court should deny remand. At a minimum, each element was colorable, which is all that *Martin* requires to defeat the fee request.

### A. Necessarily Raised

The Town's claim that Defendants are violating an alleged condition of HHI's zoning approval by "offer[ing] . . . helicopter tours" (Pl.'s Br. at 10) first requires a determination of what constitutes "helicopter tours." The Town provides the framework. Its verified expert report adopts the federal definition of "commercial air tour" in 14 C.F.R. §§ 110.2 and 136.1(d), explains the Part 119, Part 135, and § 91.147 framework, and describes that framework as "an objective, federal definition against which the 'no helicopter tours' representation can be measured." (Compl. Ex. 13 at 3.) The report applies § 119.1(e)(2) and § 91.147 to the observed flight tracks. (*Id.* at 6.) The report relies on federal aviation agencies' alleged

determinations that the FlyNYON operating model is "commercial air touring." (*Id.* at 14; *see id.* at 9.) The body of the Complaint, not only the exhibit, pleads the FAA Chief Counsel's determination and the NTSB's finding about the regulatory exception the operators invoked. (Compl. ¶¶ 43-44.)

The Town responds that the report "is evidence, not a claim." (Pl.'s Br. at 10.) The report, however, is an exhibit the Town attached to, incorporated in, and verified with its Complaint. (Compl. ¶ 10; Verification ¶ 2.) The federal determinations also appear in the body of the Complaint. (Compl. ¶¶ 43-45.) A removing defendant that reads a verified pleading as the plaintiff wrote it, including the definition that the plaintiff's own expert calls the objective measure of the condition, is not inventing a federal issue.

The Town leans on the report's statement that "[f]ederal legality and zoning compliance are separate questions." (Compl. Ex. 13 at 3.) That statement addresses a different point. The report separates the question whether a flight is *lawful* under the federal operating rules from the question whether the facility complies with its approval. (*Id.*) The report does not separate the question of what a "tour" *is* from the federal definition. To the contrary, the report concludes that a § 91.147 tour "is still a helicopter tour" for purposes of the representation (*id.*), a conclusion that follows from applying the federal classification. The report thus uses federal law to

define the operative term, while leaving the legality of individual flights to the FAA. (*Id.* at 3, 12.)

The report's further statement, on which the Town relies, that "[w]hether FlyNYON's tours are federally authorized or not, they are helicopter tours" (Compl. Ex. 13 at 12; *see* Pl.'s Br. at 10), makes the same distinction. Authorization is a question of federal legality, which the report leaves to the FAA. Whether a flight is a "tour" in the first place is the question the report answers with the federal definition. (Compl. Ex. 13 at 3, 6.)

The Town also offers an alternative theory that "tours" can be given its plain meaning and proved through marketing, pricing, and route evidence alone. (Pl.'s Br. at 9-10 (citing *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 810 (1988)).) The Complaint does include allegations about the NYON Defendants' marketing. (Compl. ¶¶ 36-41.) But the Town pleaded most of those allegations through the same expert report (*id.* ¶¶ 36-38 (citing Compl. Ex. 13 at 4)), and that report treats the federal definition as the "objective" measure against which the "no helicopter tours" representation is to be judged. (Compl. Ex. 13 at 3.) The Town did not plead marketing as a freestanding definition of "tours." The Town now recasts those allegations as an independent plain-meaning theory. But the Town chose to retain an FAA expert who applies a federal definition as the "objective" measure of the condition and proves the violation with federal agency classifications.

A plaintiff that builds its claim that way cannot avoid the federal issue by relabeling part of its pleading. Nor does the Town's observation that the hours condition turns on time-stamped flight records (Pl.'s Br. at 9) matter, because the Notice invoked supplemental jurisdiction over the remaining claims. (Notice ¶ 23.) The federal issue is therefore necessarily raised. At a minimum, Defendants' reading of the Complaint was objectively reasonable. *Martin*, 546 U.S. at 141.

### B. Actually Disputed

The Town does not contend that this element is lacking. (Pl.'s Br. at 9 (arguing that Defendants "cannot satisfy the first, third or fourth" requirements).) The record confirms a genuine dispute. Defendants do not accept the Town's characterization of their operations. (Notice ¶ 13.) The Town's own expert states that the federal authority under which current flights are conducted "cannot be determined from this record." (Compl. Ex. 13 at 12.) The Town's OTSC Letter Brief anticipated a federal-law contest and responded to it in advance under *Wolens*. (OTSC Letter Br. at 2, 11-12, 14.) The Town characterizes that contest as a preemption defense, and Defendants address that characterization in Point I.F below.

### C. Substantial

Substantiality looks to "the importance of the issue to the federal system as a whole." *Gunn*, 568 U.S. at 260. The classification of commercial air tours matters to the federal system beyond these parties. As the Town's expert explains, the FAA

determines whether a flight is a commercial air tour "from the overall character of the flight, not from the label the operator chooses," and that classification determines which certificate or authorization the operator must hold. (Compl. Ex. 13 at 3, 6.) A state-court decree that adopts the federal definition and applies it to classify a federally regulated operator's flights could diverge from the FAA's own classification of the same operations. The Town also relies on federal agency action, the FAA Chief Counsel's analysis and the FAA's final determination, as proof of its claim. (Compl. ¶ 43.) *Grable* found substantiality in part because the federal government had "a direct interest in the availability of a federal forum to vindicate its own administrative action." 545 U.S. at 315.

The Town's responses do not defeat substantiality. No federal agency is a party here, but *Grable* does not require one. *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 700-01 (2006), distinguished *Grable* from claims that are "fact-bound and situation-specific." *Kalick* likewise observed that a dispute over whether a defendant "abided by the regulations," rather than over their interpretation, did not present a substantial federal question. 372 F. App'x at 320. Defendants do not rely on a generalized federal interest in aviation safety. *See id.* at 321. The Third Circuit has drawn the same line, distinguishing parties who "disagree over the application of the Medicare Act to their situation" from a case in which "determination of the actual meaning [of a specific term] under the Medicare

statute has been hotly disputed." *MHA*, 629 F. App'x at 413 (quoting *In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 81 (D. Mass. 2006)). The point is narrower than a generalized interest. The Town has made a federal classification, together with the FAA's own determination applying it, the measure of its claim. Whether the FAA's commercial-air-tour classification means what the Town says is a question of federal law that affects how operators nationwide are classified, not merely a fact-bound application. That issue is substantial.

**D. Federal-State Balance**

*Grable* permitted jurisdiction in part because "it will be the rare state title case that raises a contested matter of federal law," so that jurisdiction would have "only a microscopic effect on the federal-state division of labor." 545 U.S. at 315. The theory of removal here is similarly limited. The Town warns that under Defendants' theory "every zoning dispute involving an airport, heliport, or helipad would belong in federal court." (Pl.'s Br. at 14.) That is not the theory. Most land-use disputes involving aviation facilities concern hours, siting, or construction, and do not turn on federal operating-rule classifications. Here, however, the Town chose to plead through an FAA expert that the alleged zoning condition turns on federal aviation classifications, and chose to prove Defendants' alleged zoning violation by reference to federal agency determinations. The Town's election to proceed in this manner does not risk upsetting the principle that land use is ordinarily a traditional area of

state and local concern, *see FERC v. Mississippi*, 456 U.S. 742, 767 n.30 (1982), or the Municipal Land Use Law's assignment of enforcement to municipalities, *see* N.J.S.A. 40:55D-18. The Town's strategy here would not send a "horde" of zoning cases into federal court. *Grable*, 545 U.S. at 318.

### E. *Tipp City* Supports Removal, and the Town's Later Authorities Do Not Foreclose It

The Notice cited *Tipp City*, 204 F.R.D. 388, in which two municipalities sued an airport operator in state court for nuisance, alleging that the operator had failed to implement FAA tower orders governing departure corridors. *Id.* at 395-96. The court held that the complaint "appears to raise a substantial question of federal law" because the merits of the nuisance claim "clearly raise the question of whether the Tower Orders have been implemented." *Id.*[2]

Later airport decisions have distinguished *Tipp City* on the ground that the complaints before them raised no federal question on their face, and the federal issue arose only from an anticipated defense.[3] That distinction favors Defendants.

[2] The court rejected complete preemption, which Defendants have not raised here in any event. *Id.* at 391-94. Although *Tipp City* predates *Grable* and *Gunn*, it applied the same substantial-federal-question inquiry that *Grable* later confirmed.

[3] *Lockhart v. Bd. of Cnty. Comm'rs*, No. 24-cv-00951-CNS-STV, 2024 WL 5671113, at *6 (D. Colo. June 4, 2024) (recommendation of magistrate judge), *adopted*, 2024 WL 5671111 (D. Colo. July 17, 2024); *Town of Superior v. Bd. of Cnty. Comm'rs*, No. 24-cv-00711-DDD-STV, 2024 WL 4591384, at *6 (D. Colo. Sept. 26, 2024) (recommendation of magistrate judge), *adopted*, 2024 WL 4591381 (D. Colo. Oct. 11, 2024); *Fuller v. Jefferson Cnty.*, No. 24-cv-00157-DDD-STV, 2024 WL 3340973, at *6 (D. Colo. June 4, 2024) (recommendation of magistrate judge).

As in *Tipp City*, where alleged noncompliance with federal orders was a predicate for the state-law nuisance claim, here the Town pleads that federal aviation classifications are the measure of the "no helicopter tours" municipal zoning condition it aims to enforce. In both cases, and unlike in those later decisions, the federal content appears on the face of the plaintiff's own pleading. (Compl. ¶¶ 10-11, 43-45; Compl. Ex. 13 at 3, 5-6, 9, 14.)

### F. The Town's Authorities Are Inapposite, and the Question Remains Open

*Kalick.* In *Kalick*, a passenger who had been denied boarding sued an airline in federal court, invoking a federal regulation that creates no private right of action. 372 F. App'x at 320. The court held that the passenger "cannot simply cite to a federal regulation that does not give rise to a private cause of action in order to satisfy federal subject matter jurisdiction," and noted that "the interpretation of the federal regulation" was not "in dispute, only whether [the airline] abided by the regulations." *Id.* at 320-21. *Kalick* involved a private contract dispute. *Kalick* did not involve a governmental plaintiff alleging that federal regulatory classifications determine the meaning of the condition it seeks to enforce, nor did the *Kalick* plaintiff rely on an FAA expert applying a federal framework and federal agency determinations. Here, by contrast, the Town itself has made the federal classification the measure of the condition it seeks to enforce. *Kalick* is inapposite.

*Merrell Dow* and *Empire HealthChoice.* The Town's reliance on these decisions is misplaced. *Merrell Dow* held that a state-law claim does not arise under federal law merely because it incorporates a federal standard. *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 813-14 (1986). *Grable*, however, rejected the broad reading of *Merrell Dow* on which the Town depends. The *Grable* Court explained that *Merrell Dow* treated the absence of a federal cause of action as "evidence relevant to, but not dispositive of," the jurisdictional question, and that the decision rested as well on the prospect of a "horde" of state tort cases. *Grable*, 545 U.S. at 318. Neither consideration supports remand here. The Town does not simply borrow a federal standard of care. The Town adopts a federal classification as the "objective" measure of the condition it seeks to enforce and proves the violation with the FAA's own determination applying that classification. (Compl. ¶¶ 43-44; Compl. Ex. 13 at 3, 9, 14.) And as shown in Point I.D, the cases in which a municipality builds its claim that way are few. *Empire HealthChoice* does not change the analysis. That decision described *Grable* as a "special and small category" of cases, 547 U.S. at 699, and distinguished claims that are "fact-bound and situation-specific," *id.* at 700-01. This case falls within the category because the question the Town presents is what the federal classification means, not whether a party complied with it. The Town's fallback argument, that a court might "consult[] a federal definition to give content to the word 'tours'" and that a borrowed federal

standard does not confer jurisdiction (Pl.'s Br. at 11), confirms that the federal content is in the Town's pleading and is not a construct of the Notice.

*Caterpillar and the preemption-defense rule.* The preemption-defense rule is beside the point. "[A] case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987). The Notice did not rely on a preemption defense, and the Town acknowledges that the Notice did not invoke complete preemption. (Pl.'s Br. at 16.) The Notice invoked *Grable* and *Gunn* based on the content of the Town's own pleading. (Notice ¶¶ 16-20.) Whether federal law preempts the Town's claims is a merits defense, not the basis for removal. *See Empire HealthChoice*, 547 U.S. at 701.

The Town also argues that the Complaint's allegations that the facility is private-use and federally unfunded, and that the FAA correspondence does not mention zoning, merely answer an anticipated defense. (Pl.'s Br. at 15 (citing Compl. ¶¶ 10-11, 45).) These arguments are red herrings. Removal does not depend on those allegations alone. The federal content on which removal rests is offered to prove the alleged violation, not to rebut a defense: the FAA's classification of the 2018 FlyNYON-branded flight as a commercial air tour; the NTSB's finding about the regulatory exception; and the FAA expert's application of the federal framework to the observed flights. (Compl. ¶¶ 43-44; Compl. Ex. 13 at 3, 6, 9, 14.) The Town

pleads those federal regulatory determinations as affirmative proof that tours are flown, which is a necessary element of its claim that Defendants violated an alleged "no tours" zoning condition.

*The state of the law.* No published Third Circuit decision resolves whether *Grable* reaches a municipal zoning-enforcement action that depends on federal aviation classifications. Defendants have not located a decision in this Circuit addressing *Grable* jurisdiction in that setting. Courts in this Circuit have remanded aviation-related state-law claims under *Grable* in other contexts, *see, e.g., Yellen v. Teledyne Cont'l Motors, Inc.*, 832 F. Supp. 2d 490, 508-09 (E.D. Pa. 2011), but those decisions did not involve a plaintiff that pleaded a federal classification as the measure of its own claim. The Court should hold that jurisdiction exists here. If the Court disagrees, the question remains open, and *Martin* does not penalize a removal on a colorable theory in an open area of law.

## POINT II

## THE NOTICE OF REMOVAL MADE NO "CONCESSION" BUT INSTEAD IDENTIFIED ARTFUL PLEADING

The Town argues that the Notice "concede[s]" that the Complaint is framed "as a matter of state law," and that this "concession should end the inquiry." (Pl.'s Br. at 1, 8, 18.) The sentence from which the Town draws that phrase reads in full:

> ***Notwithstanding Plaintiff's attempt to frame the Complaint*** as a matter of state law, the Complaint cites federal regulations and laws throughout, including in its

> associated exhibits, and appeals to federal law undergird Plaintiff's request for injunctive relief.

(Notice ¶ 19 (emphasis added).) The Notice then states that "federal jurisdiction may not be defeated by artful pleading." (*Id.* ¶ 22.)

Defendants were not conceding in the Notice that the Complaint is actually framed as a matter of state law. Rather, Defendants were pointing out the Town's attempt to artfully plead around the substantial federal issues necessarily raised in the Complaint. Read in context, the sentence describes how the Town characterized its claims and then disputes that characterization. The word "[n]otwithstanding" signals disagreement, not agreement. The *Grable* doctrine exists specifically for these circumstances, i.e., to address federal issues embedded in "a state law claim." *Gunn*, 568 U.S. at 258.

The Town's own fallback argument confirms the point. If the federal definition of "tours" is merely borrowed under *Merrell Dow* (Pl.'s Br. at 11), then the federal content is part of the Town's case, and the parties disagree only about its jurisdictional consequence. That disagreement is legitimate, and *Martin* does not penalize it.

The Town also contends that Defendants "recast[]" the Complaint and "combed the exhibits for references" to federal agencies. (Pl.'s Br. at 1.) That is incorrect. No combing was necessary. The FAA and NTSB determinations appear in the body of the Complaint itself, and the Town attached and verified the expert

report that applies them. The federal regulatory question lies at the heart of the Town's claims and requested relief, and the Notice identified those materials. (Notice ¶ 19.)

Each characterization in the Notice rests on the Town's verified pleading: the FAA identifier and facility data (Compl. ¶¶ 10-11), the FAA Chief Counsel's determination and the FAA's final classification (*id.* ¶ 43; Compl. Ex. 13 at 5), the NTSB's finding about the regulatory exception (Compl. ¶ 44; Compl. Ex. 13 at 5), the FAA correspondence (Compl. ¶ 45; Compl. Ex. 13 at 11), the federal definition of commercial air tours (Compl. Ex. 13 at 3), the application of § 119.1(e)(2) and § 91.147 to the observed flights (*id.* at 6), and the federal determination on which the report's opinions rely (*id.* at 9, 14). The Town attached these exhibits, described them as true and accurate copies, and verified the Complaint. (Compl. ¶ 10; Verification ¶ 2.) Relying on what a plaintiff chose to plead and verify is not recasting the plaintiff's case.

## POINT III

## THE TOWN'S REQUEST FOR FEES AND COSTS SHOULD BE DENIED

### A. Fees Are Not a Penalty for Losing a Remand Motion

"Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees

should be denied." *Martin*, 546 U.S. at 141. The standard balances "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party" against "Congress' basic decision to afford defendants a right to remove as a general matter." *Id.* at 140. As the Supreme Court explained, "there is no reason to suppose Congress meant to confer a right to remove, while at the same time discouraging its exercise in all but obvious cases." *Id.* Fees therefore do not follow automatically from remand.

The Town relies on *Mints v. Educational Testing Service*, 99 F.3d 1253, 1260 (3d Cir. 1996), for the proposition that bad faith is not required. (Pl.'s Br. at 18.) Defendants agree that bad faith is not required. *Mints*, however, predates *Martin*, and *Martin* now supplies the governing test: whether the removal had an "objectively reasonable basis." 546 U.S. at 141. The Third Circuit applies *Martin* to that question. *See, e.g., Inselberg*, 661 F. App'x at 779.

### A. CONTROLLING AND DISTRICT OF NEW JERSEY AUTHORITY DENIES FEES FOR COLORABLE REMOVALS IN UNSETTLED AREAS

The Third Circuit has held that a "colorable removal claim in an area of unsettled law" does not merit a fee award. *Roxbury*, 316 F.3d at 228. The court reiterated that principle in *League of Women Voters*, 921 F.3d at 384. The court affirmed the fee award in that case because the removal was untimely under settled circuit precedent, which held that an external writ of election was not an "other

paper" capable of restarting the removal period. *Id.* at 383-84. No comparable settled rule forecloses the removal here.

The Third Circuit applied the same principle to a *Grable* removal in *Inselberg*. The defendants there removed state-law claims on complete-preemption and *Grable* theories, and the district court remanded but denied fees. 661 F. App'x at 778. The Third Circuit affirmed, explaining that the case "concern[ed] two complex areas of federal jurisdiction law" and that, "[g]iven the difficult nature of the jurisdictional issues involved," the defendants had an objectively reasonable basis for seeking removal. *Id.* at 779.

Judges of this Court have reached the same result. In *Ramos v. JetBlue Airways Corp.*, No. 22-01214, 2022 WL 7993153 (D.N.J. Oct. 13, 2022), the airline removed a passenger's negligence claims on complete-preemption and *Grable* theories based on a federal aviation regulation. The court remanded but denied fees, finding that because the regulation "could have been relevant" to the claims, the airline "had a colorable, if ultimately incorrect, claim of federal jurisdiction at the time of removal." *Id.* at *6. In *Brahamsha v. Supercell Oy*, No. 16-8440, 2017 WL 3037382 (D.N.J. July 17, 2017), a removal under the Class Action Fairness Act, the court denied fees in part because the Third Circuit had not yet had the opportunity to craft "any controlling precedent" on the issue. *Id.* at *6.

### B. Other Courts Deny Fees in Comparable Circumstances

Other courts in this Circuit deny fees when the court of appeals has not decided the question, when the defendant seeks a good-faith extension of existing law, or when the plaintiff's own pleading invited the federal argument. In *Delaware v. BP America Inc.*, 578 F. Supp. 3d 618 (D. Del. 2022), the court remanded but denied fees because, "[a]lthough the overwhelming weight of authority in other similar cases . . . supports Plaintiff, the Third Circuit has not decided these issues," and "[i]t was not objectively unreasonable for Defendants to wish to litigate these removal grounds again, in this Circuit." *Id.* at 641. In *In re Processed Egg Products Antitrust Litigation*, 836 F. Supp. 2d 290 (E.D. Pa. 2011), the court denied fees because the defendants "were attempting to extend this area of law based upon certain legal authority," which "provided an objectively comprehensible and nonfrivolous basis for removal." *Id.* at 303. In *Lane v. CBS Broadcasting Inc.*, 612 F. Supp. 2d 623 (E.D. Pa. 2009), the court denied fees where the plaintiff "drafted a complaint that liberally referenced federal criminal proceedings and that incorporated federal criminal documents," so that it was "hardly surprising that Defendants took advantage of this apparent infusion of federal law." *Id.* at 637-38.

The same reasoning has been applied to airport-related removals, including by the courts that distinguished *Tipp City*. *Lockhart*, 2024 WL 5671113, at *6 n.4

(recommending denial of fees because "there is no clear Tenth Circuit authority on point"), *adopted*, 2024 WL 5671111; *see also Fuller*, 2024 WL 3340973, at *6 n.4.

Each of these considerations is present here. While Defendants contend removal is appropriate, including (without limitation) under *Tipp City*, at a minimum, no controlling decision resolves whether removal is proper where a plaintiff seeks a determination of federal aviation standards as a prerequisite to a zoning violation. (Compl. ¶¶ 10-11, 43-45; Compl. Ex. 13 at 3, 5-6, 9, 14.) At the very minimum, Defendants had an objectively reasonable basis to remove under *Grable* where the Town's own verified FAA expert report states that federal law "supplies an objective, federal definition" of the very condition the Town seeks to enforce. (Compl. Ex. 13 at 3.)

### C. *Yellen* and *Mercom* Are Distinguishable

The Town's brief does not cite *Yellen*, but Defendants address it because it is the principal aviation decision in this Circuit awarding fees after a *Grable* removal. The court there awarded fees because the defendants' "notice of removal and subsequent filings mischaracterize plaintiffs' complaint as challenging the FAA, the Federal Aviation Act, and FARs, and fail to identify a single paragraph in the original complaint to substantiate these contentions." 832 F. Supp. 2d at 508-09. The court also found that the defendants ignored *Empire HealthChoice* and settled circuit law separating federal standards of care from state remedies, and that their

fraudulent-joinder arguments misstated state law. *Id.* Here, by contrast, every characterization of the Complaint is tied to a specific paragraph of the Town's pleading and the incorporated FAA expert report. (*See* Point II, *supra*.) And Defendants have addressed *Empire HealthChoice*, *Merrell Dow*, and *Kalick* directly. (*See* Point I.F, *supra*.)

Nor is *Mercom Group, LLC v. Diati Staffing, LLC*, No. 16-3475, 2016 WL 4054921 (D.N.J. July 26, 2016), comparable. The court there found that the defendants had "substantially mischaracterized" the claims in asserting Copyright Act preemption, contrary to explicit Third Circuit precedent. *Id.* at *5. The court also relied on the defendants' decision to wait nearly a month after suit was filed, let the deadline for opposing the order to show cause pass, and remove one week before the scheduled hearing. *Id.* at *6. None of those circumstances is present here. To the contrary, insofar as the Town's Complaint, incorporated FAA expert report, and accompanying OTSC Letter Brief liberally reference federal regulations and decisions from regulatory agencies, "[i]t is hardly surprising that Defendants took advantage of this apparent infusion of federal law." *Lane*, 612 F. Supp. 2d at 637-38.

### D. The Timing of Removal Is Not an "Unusual Circumstance"

The Town argues that removal occurred shortly before a hearing on its application for temporary restraints. (Pl.'s Br. at 19-20.) Defendants removed two

days after the Complaint was filed (Notice ¶¶ 12, 24), well within the thirty days that 28 U.S.C. § 1446(b) allows. Promptly exercising a statutory right of removal, in a case filed together with an application for immediate restraints, is not an "unusual circumstance" under *Martin*. Rather, the unusual circumstances *Martin* identified concern a plaintiff's conduct, such as "a plaintiff's delay in seeking remand or failure to disclose facts necessary to determine jurisdiction." 546 U.S. at 141. Removal two days after filing is the opposite of the month-long delay that concerned the court in *Mercom*. 2016 WL 4054921, at *6.

Finally, should the Court be inclined to award fees, Defendants respectfully request the opportunity to respond to any certification of counsel submitted under L. Civ. R. 54.2.

## CONCLUSION

For these reasons, Defendants respectfully request that the Court deny the Town's motion to remand. In the alternative, if the Court remands this action, Defendants respectfully request that the Court deny the Town's request for costs and attorney's fees under 28 U.S.C. § 1447(c).

Dated: November 3, 2026

Respectfully submitted,

**LOWENSTEIN SANDLER LLP**

By: s/*Matthew R. Friedenberg*
Matthew R. Friedenberg
Michael T. Long
John S. Stolz
One Lowenstein Drive
Roseland, New Jersey 07068
973.597.2500
jstolz@lowenstein.com
mlong@lowenstein.com
mfriedenberg@lowenstein.com
*Attorneys for Defendant RTC Properties Inc.*

**CALCAGNI & KANEFSKY LLP**

By: s/ *Thomas R. Calcagni*
Thomas R. Calcagni
Martin B. Gandelman
One Newark Center
1085 Raymond Boulevard, 18th Floor
Newark, New Jersey 07102
862.208.1822
mgandelman@ck-litigation.com
*Attorneys for Defendants FlyNYON LLC, FlyNYON Digital LLC, and NY on Air Limited Liability Company (improperly pled as NYONair)*